UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROY WINDOM,** | : | |
| **Plaintiff** | : | **CIV. ACTION NO. 3:25-CV-139** |
| **v.** | : | **(JUDGE MANNION)** |
| **DR. RAJINDER MALHI, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. §1983 in which plaintiff alleges that defendants provided him inadequate medical care following an incident in which he fell from an upper bunk bed and sustained injuries. The court dismissed the case on February 25, 2026, finding that it was barred by a bankruptcy matter in the United States Bankruptcy Court for the Southern District of Texas. The case is before the court on plaintiff's motion to alter or amend that judgment.

For the reasons that follow, the motion to alter or amend judgment will be granted. Having done so, the court will restore the case to the procedural posture that existed prior to the dismissal and address the motion to dismiss for failure to state a claim upon which relief may be granted filed by defendants Malhi, Edwards, Talasky, and Nalley. Based on

the court's review, the motion to dismiss will be denied, and a case management schedule will be set to govern this case.

## I. BACKGROUND

Plaintiff, Roy Windom, filed this case on January 22, 2025. (Doc. 1). According to the complaint, Windom was an inmate in SCI-Huntingdon when he suffered a fall while trying to get down from a top bunk in his cell on March 25, 2022, which injured his left knee. (*Id.* ¶9). He was examined by Nurse Trice following the fall, who gave him an ACE bandage, crutches, ice, and medication, and told him that an x-ray would be performed on the knee the following day. (*Id.* ¶12). He was given an x-ray as scheduled on March 26, 2022. (*Id.* ¶13). While waiting for his x-ray on March 26, 2022, Windom spoke with defendant Dr. Rajinder Malhi, who told Windom that he would contact him if the x-ray showed anything concerning. (*Id.* ¶15).

Sometime shortly after this appointment, Windom filed a sick call request based on pain in his injured knee. (*Id.* ¶16). He was seen by defendant physician's assistant ("PA") Talasky. (*Id.* ¶17). Windom stated that he wanted an MRI to be performed on his knee because it felt similar to a ligament tear he had experienced years earlier in his right knee. (*Id.*) Talasky purportedly told him that pursuant to a policy, he would have to go through physical therapy before he could have an MRI. (*Id.*) Windom said

that he did not think physical therapy would help his knee, and Talasky purportedly "agreed" but said that it was required that he go through physical therapy as a "procedural" step before he could be given an MRI. (*Id.* ¶19).

Windom began physical therapy in May 2022. (*Id.* ¶20). The physical therapist allegedly opined that Windom may have a torn lateral collateral ligament ("LCL"), a torn anterior cruciate ligament ("ACL"), and a torn meniscus. (*Id.*) Windom saw the physical therapist again in August or September of 2022 and told the physical therapist that he did not think the process was helping his knee. (*Id.* ¶21). The physical therapist allegedly "agreed" and referred him back to the prison's medical department. (*Id.* ¶22).

Shortly after this appointment, Windom placed another sick call request and was again seen by defendant Talasky. (*Id.* ¶23). Windom told Talasky that the physical therapist believed he may have a torn ACL and a torn LCL. (*Id.*) Windom again requested an MRI on his knee, but Talasky denied the request, allegedly stating that Windom still did not meet the requirements for an MRI. (*Id.*) Talasky gave Windom a knee sleeve and medication, which purportedly did not alleviate his pain. (*Id.* ¶24).

Windom placed a sick call request on an unspecified date following this appointment. (*Id.* ¶25). He was again seen by Talasky, who gave him a cortisone shot. (*Id.*) The shot purportedly reduced the swelling in Windom's knee but did not alleviate his pain. (*Id.*) Windom told Talasky that he was experiencing lower back and hip pain. (*Id.*) Talasky purportedly stated that it was "difficult to request" x-rays on an inmate's lower back, and as a result, x-rays were never ordered for his hip and lower back pain. (*Id.*)

Windom placed another sick call request and was seen by defendant Malhi on November 11, 2022. (*Id.* ¶26). Windom told Malhi about the physical therapist's opinion that he may have a torn LCL, a torn ACL, and a torn meniscus, and described his symptoms. (*Id.*) Malhi told Windom that he would give him a series of three cortisone shots over three months and that if the shots did not help, he would schedule him for an MRI. (*Id.*) Windom told him that he had already been given a cortisone shot by Talasky and that the shot had not helped. (*Id.*) Malhi ordered the cortisone shots despite Windom's complaint. (*Id.*) After the appointment, however, Malhi never followed up to have the cortisone shots performed, and as a result, Windom was never given the shots. (*Id.* ¶27).

Based on Malhi's lack of action and the lack of shots, Windom filed another sick call request and was seen by defendant Dr. David Edwards

on December 7, 2022. (*Id.* ¶28). Windom told him about the physical therapist's opinion and his previous requests for an MRI and asked that Edwards refer him for an MRI. (*Id.*) Edwards examined the knee and agreed with the physical therapist's assessment that Windom may have torn ligaments. (*Id.* ¶29). Edwards told Windom that he would look into scheduling him for an MRI and prescribed him a new knee brace. (*Id.*) Following the appointment, however, Dr. Edwards never called Windom back to the medical department to follow up on the MRI. (*Id.* ¶30). Windom met with PA Nally shortly after this appointment and told her about the opinions from Edwards and the physical therapist. (*Id.* ¶31). Windom requested an MRI, but Nally purportedly told him that he did not meet the requirements for receiving an MRI. (*Id.*)

Windom made another sick call request on an unspecified date due to worsening pain in his hip. (*Id.* ¶32). He was seen by defendant Talasky and told her that his pain had continued unabated since his accident approximately ten months before the appointment. (*Id.* ¶33). Talasky again told him that he did not meet the requirements for an MRI or for an x-ray on his hip. (*Id.* ¶34).

Windom was referred for an MRI on May 7, 2023, by an unspecified individual. (*Id.* ¶36). The MRI was performed at SCI-Benner Township on

July 12, 2023, and led to the conclusion that Windom had a torn meniscus and a possible torn ACL. (*Id.* ¶38).

Windom was seen by an orthopedist on January 18, 2024, who confirmed that Windom had a torn meniscus and a torn ACL. (*Id.* ¶39). The doctor scheduled him for surgery. (*Id.*) The surgery was performed on April 24, 2024, and involved a partial meniscectomy and a partial synovectomy. (*Id.* ¶40). During a follow-up appointment, the orthopedist allegedly stated that Windom's meniscus "had been crushed and was in such a state of deterioration that it could not be repaired and needed to be removed instead." (*Id.*) The orthopedist also purportedly stated that Windom's ACL had "completely withered away." (*Id.*) The orthopedist "[att]ributed[1] this to the length in time between when the injury occurred and when treatment was finally render[e]d . . . over two years" after the injury. (*Id.*) The orthopedist also noted that Windom was developing arthritis in his left knee as a result of walking on the injured knee for too long. (*Id.*) PA Nally also purportedly found on an unspecified date that Windom had developed arthritis in his right knee as a result of walking on an injured knee for too long and that he has difficulty walking, standing, bending over, and laying

[1] The complaint uses the word "contributed," but it appears from the context of the sentence that plaintiff intended to use the word "attributed."

down because of the delayed treatment. (*Id.* ¶44). The complaint alleges that Windom continues to suffer from chronic pain in both his knees, his left hip, and his lower back. (*Id.* ¶45).

On October 23, 2024, Windom was seen by a different physical therapist, after being seen by defendant Talasky for sick call. (*Id.* ¶73). The physical therapist told Windom there was nothing he could do to help him because he had a torn ACL. (*Id.*) Windom then spoke with defendant Nally during sick call on October 30, 2024, Nally told Windom that he was not scheduled for surgery and that the knee brace he was wearing was meant to fix any ongoing issues with his ACL. (*Id.* ¶74). After reviewing reports from the orthopedist, however, Nally purportedly concluded that he would need additional reconstructive surgery on his ACL. (*Id.* ¶75). Nally stated, however, that Windom would have to again begin physical therapy before he would be referred for surgery. (*Id.*)

On November 7, 2024, Windom learned that Nally had not referred him for reconstructive surgery because she had determined that his ACL tear was partial and that surgery was not needed. (*Id.* ¶78). This purportedly conflicted with the notes of Windom's treating orthopedist, which noted that he needed reconstructive surgery. (*Id.* ¶79). Windom then met with doctor Delismas on December 18, 2024, who purportedly stated that surgery

would not be approved. (*Id.* ¶¶80-82). Delismas stated that he would request surgery nonetheless. (*Id.*) Windom met with Nally to express concerns about this visit on December 18, 2024, but Nally stated that she could not overrule a doctor's orders. (*Id.* ¶83). Nally purportedly stated during this appointment that she believed surgery was necessary. (*Id.*) On December 25, 2024, Windom was again seen by Delismas, who stated that he would see Windom in January and that if his condition had not improved by then he would recommend surgery. (*Id.* ¶84).

The complaint asserts claims for deliberate indifference to a serious medical need in violation of the Eighth Amendment against defendants Malhi, Edwards, Talasky, and Nalley, correctional health-care administrator ("CHCA") McCorkle. (*Id.* at 13-20). Windom requests damages, injunctive relief, and declaratory relief. (*Id.* at 24-27).

On February 6, 2025, the court directed the Clerk of Court to serve defendants with plaintiff's complaint. (Doc. 7). Defendants Malhi, Nalley, Edwards, and Talasky ("Wellpath Defendants") responded to the complaint by moving for a stay pursuant to 11 U.S.C. §362 based on an ongoing bankruptcy proceeding filed by their employer, Wellpath Holdings, Inc. ("Wellpath"), and its affiliated companies in the United States Bankruptcy Court for the Southern District of Texas ("the bankruptcy court"). (Doc. 11).

The court granted the motion and stayed and administratively closed the case on March 14, 2025. (Doc. 14). On May 30, 2025, defendants provided a status report stating that the automatic stay no longer applied to this case in light of a May 1, 2025, order from the bankruptcy court approving Wellpath's Chapter 11 plan of reorganization. *See* (Doc. 15); *see also In re Wellpath Holdings, Inc.*, No. 24-90533, Doc. 2596 (Bankr. S.D. Tex. May 1, 2025). The court accordingly lifted the stay and reopened the case on June 26, 2025. (Doc. 16).

On July 30, 2025, the Wellpath Defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted. (Doc. 17). In response, Windom moved for leave to amend the complaint. (Doc. 19).

On October 31, 2025, Windom moved for sanctions against defendant McCorkle and his counsel for his failure to respond to Windom's complaint. (Doc. 29). Windom subsequently moved for contempt of court against McCorkle and his counsel on December 30, 2025. (Doc. 34). McCorkle responded to this second motion by moving to dismiss the case for failure to state a claim upon which relief could be granted on January 14, 2025. (Doc. 38). Windom then withdrew his claims against McCorkle and consented to his dismissal on February 11, 2026. (Doc. 42).

Meanwhile, on December 30, 2025, the Wellpath Defendants moved to dismiss the case as barred by the bankruptcy court's discharge order because they were all acting in their capacity as Wellpath employees when they took the actions that give rise to Windom's claims. (Doc. 32). Windom opposed this motion to dismiss on January 14, 2026. (Doc. 37). Windom argued that the motion to dismiss should be denied because the Wellpath Defendants did not give him sufficient notice of the bankruptcy court's order. (*Id.*)

On February 25, 2026, the court granted Wellpath Defendants' motion to dismiss based on the bankruptcy proceedings. (Docs. 44-45). The court noted Windom's argument that the motion to dismiss should be denied because he had not received sufficient notice of the bankruptcy court proceeding, but held that any relief for insufficient notice would have to come from the bankruptcy court. (Doc. 44 at 5). "If the bankruptcy court subsequently finds that this case is properly reopened based on a lack of notice of the bankruptcy discharge," this court noted, "plaintiff may assert this as the basis for a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59 or a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60." (*Id.* at 6). The court

additionally granted defendant McCorkle's motion to dismiss based on Windom conceding to the dismissal. (Docs. 44-45).

On March 16, 2026, Windom filed the exact motion for relief from judgment contemplated by this court's March 16, 2026 order. (Doc. 46). Windom notes that he was successful in persuading the bankruptcy court of his argument that he received insufficient notice of the bankruptcy court proceeding and that this case should be reopened on that basis. (*Id.*) He attaches as an exhibit to the motion the relevant order from the bankruptcy court. (*Id.* at 6). Defendants have not responded to the motion or otherwise refuted the contention that the bankruptcy court has approved the reopening of this matter.

## II. Discussion

As a preliminary matter, the court will grant Windom's motion for relief from judgment. As contemplated by the court's previous opinion, the bankruptcy court has granted Windom relief from the bankruptcy discharge. (*See* Doc. 46 at 5). Thus, vacating the dismissal and reopening this case as to defendants Malhi, Edwards, Talasky, and Nalley is appropriate.[2] Upon

[2] Because Windom conceded to the dismissal of McCorkle prior to the court's previous judgment, the claims against McCorkle will not be reinstated and the he will be terminated from the docket of this case.

reopening the case, the court restores it to the procedural posture that existed prior to the dismissal, and accordingly addresses defendants'[3] motion to dismiss for failure to state a claim upon which relief may be granted.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief may be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim, Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to

---

[3] Because defendant McCorkle has been terminated, the court will refer to Malhi, Edwards, Talasky, and Nalley simply as "defendants" throughout the remainder of this opinion.

a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In resolving a motion to dismiss, the court thus conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (quotations omitted).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**B. Deliberate Indifference**

Plaintiff's constitutional claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

Windom's constitutional claims allege deliberate indifference to a serious medical need in violation of the Eighth Amendment. To state a claim for deliberate indifference, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse*, 182 F.3d at 197). A serious medical

need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A plaintiff's mere disagreement as to the proper medical treatment" is not sufficient to support a deliberate indifference claim. *Lanzaro*, 834 F.2d at 346.

The deliberate indifference standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," and courts must accordingly "'disavow any attempt to second-guess the propriety or adequacy of their particular course of treatment' so long as it 'remains a question of sound professional judgment.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). A claim that "a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of

medical mistreatment under the Eighth Amendment." *Id.* (quoting *Estelle*, 429 U.S. at 106). Thus, claims that a physician has "inadequately diagnosed and treated" a plaintiff's medical condition does not amount to a violation of the Eighth Amendment if the physician was exercising his professional judgment in his diagnosis and treatment. *Id.*

In this case, the court finds that Windom has alleged deliberate indifference to a serious medical need. To begin with, Windom's injuries of a torn ACL and a torn meniscus are clearly serious medical needs, and the complaint alleges that defendants were aware that he suffered a serious knee injury after his fall.

As for deliberate indifference, Windom alleges that defendants knew that he likely had a torn ACL and a torn meniscus, but compelled him to complete years of physical therapy, cortisone shots, and other alternatives to surgery despite their purported knowledge that surgery was likely necessary. It is also not alleged that defendants pursued physical therapy or other alternatives to surgery based on their medical judgments that these would help resolve Windom's medical issues, but rather simply as procedural hurdles that Windom needed to clear before he would be approved for surgery. These allegations are sufficient to allege deliberate indifference. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)

(noting that deliberate indifference may be established "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment").

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion to alter or amend judgment will be granted, this case will be reopened and the claims against defendants Malhi, Edwards, Talasky, and Nally will be reinstated, defendant McCorkle will be terminated from the case, the motion to dismiss filed by defendants Malhi, Edwards, Talasky, and Nally will be denied, and a case management schedule will be set to govern this case.

**MALACHY E. MANNION**
**United States District Judge**

**DATED:** 10/7/26

25-139-02